J. Craig Williams, Esq., CSBN 134308
WLC | The Williams Law Corporation
One Park Plaza, Suite 600
Irvine, CA 92614-5987
T:  949-422-7617
E:  jcraig.williams@wlc-legal.com

Attorneys for Plaintiff Precision Tube Bending

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRECISION TUBE BENDING, a California corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>EXCELSIOR, LLC, a California limited liability company; MARY A. HUNT, Trustee of the EDWARD S. HUNT, JR. & MARY A. HUNT FAMILY TRUST SURVIVOR'S TRUST, dated 12/15/2015, a California trust; JEFFREY E. HUNT, Trustee of the JEFFREY E. HUNT DESCENDANTS TRUST U/T/D February 6, 2021, a California trust; JEFFREY E. HUNT, Trustee of the TODD D. HUNT DESCENDANTS TRUST U/T/D February 6, 2021, a California trust; JEFFREY E. HUNT, Trustee of the LINDA NANORA HUNT EDDY DESCENDANTS TRUST U/T/D February 6, 2021, a California trust; B. NEAL BEAVER & VIRGINIA BEAVER, Trustees of the BEAVER FAMILY TRUST, a California Trust; AMERICAN BEAUTI PLEAT, INC., a suspended California corporation and a Texas corporation; and, DOES 1-100,<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>**(1)** **CONTRIBUTION UNDER CERCLA (42 U.S.C. §§ 9613, *et seq.*)**<br>**(2)** **RESPONSE COSTS UNDER CALIFORNIA HEALTH & SAFETY CODE (§§ 25300, *et seq.*);**<br>**(3)** **NUISANCE;**<br>**(4)** **TRESPASS;**<br>**(5)** **NEGLIGENCE;**<br>**(6)** **IMPLIED EQUITABLE INDEMNITY;**<br>**(7)** **COMPARATIVE INDEMNITY;**<br>**(8)** **DECLARATORY RELIEF; and,**<br>**(9)** **CERCLA DECLARATORY RELIEF**<br><br>    **DEMAND FOR JURY TRIAL** |

Plaintiff Precision Tube Bending (PTB) makes the following allegations:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over the subject matter of this Complaint as a federal question pursuant to Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) sections 107(a), 113(a), (b) and (f), 42 U.S.C. 9607(a) and 9613(a), (b) and (f); the Solid Waste Disposal Act (SWDA), 42 U.S.C. section 6972(a); and jurisdiction pendent and ancillary over claims under California common law torts of nuisance, negligence and trespass pursuant to 28 U.S.C. section 1367.  Declaratory relief is sought pursuant to CERCLA section 113(g)(2), 42 U.S.C. § 9613(g)(2) and the Declaratory Judgment Act, 28 U.S.C. sections 2201-2202, as well as California Code of Civil Procedure section 1060.

2.      Venue lies in this Court because the alleged Releases, Disposals and damages alleged in this Complaint took place within the jurisdictional boundaries of the United States District Court for the Central District of the State of California.

3.      PTB has satisfied all jurisdictional and administrative prerequisites to the filing of this Complaint.

4.      Plaintiff PTB is a California corporation, authorized to conduct business and currently conducting business in the State of California, and its principal place of business is in Santa Fe Springs, California.  PTB is an aerospace parts manufacturer located at 13626 Talc Street Santa Fe Springs, CA 90670, adjacent to Defendants' property (PTB property).

5.      Defendant Excelsior, LLC, is a California limited liability company with its principal place of business in Huntington Beach, California.  Excelsior, LLC is the current Owner of the real property at 13545 Excelsior Drive Santa Fe Springs, CA 90670, adjacent to PTB's property (Excelsior property).

6.      Defendant Mary A. Hunt is the Trustee of the Edward S. Hunt, Jr. & Mary A. Hunt Family Trust Survivor's Trust, dated 12/15/2015, is a California trust.  This trust is a prior Owner of the Excelsior property.

7.      Defendant Jeffrey E. Hunt is the Trustee of the Jeffrey E. Hunt Descendants Trust U/T/D February 6, 2021, a California trust.  This trust is a prior Owner of the Excelsior property.

8.      Defendant Jeffrey E. Hunt is also the Trustee of the Todd D. Hunt Descendants Trust U/T/D February 6, 2021, a California trust.  This trust is a prior Owner of the Excelsior property.

9.      Defendant Jeffrey E. Hunt is also the Trustee of the Linda Nanora Hunt Eddy Descendants Trust U/T/D February 6, 2021, a California trust.  This trust is a prior Owner of the Excelsior property.

10.      Defendants B. Neal Beaver & Virginia Beaver are the Trustees of the BEAVER FAMILY TRUST, a California Trust.  This trust is a prior Owner of the Excelsior property.

11.      Defendant American Beauti Pleat, Inc. is a suspended California corporation and an active Texas corporation (ABP).  This corporation is a prior Operator at the Excelsior property.

12.      Defendant DOES 1-100 are named as fictitious individuals and/or entities who will either be named accordingly when their identities are discovered or dismissed prior to trial.  PTB alleges that like the Defendants named above, these Doe Defendants are also in some way responsible for the presence of Hazardous Substances contamination in the soils and groundwater under PTB's property.  Plaintiff seeks the Court's indulgence in naming more than the permitted number of Doe Defendants.  Plaintiff anticipates naming more than ten Doe Defendants.

COMPLAINT FOR CERCLA AND RCRA CONTAMINATION

**OTHER DOE OWNERS, OPERATORS, GENERATORS, SUPPLIERS AND HAULERS**

13.     PTB is informed and believes and based thereon alleges that additional Doe individuals and entities are past or present Owners, Operators, generators and equipment and chemical suppliers, as well as Disposal haulers who have contributed or are contributing to the past or present handling, storage, transportation, Release or Disposal of Hazardous Substances at the Excelsior property that have caused the release of Hazardous Substances in the soils and groundwater in and under its Santa Fe Springs leasehold.  The true names and capacities, whether individual, corporate, associate or otherwise of these Doe Defendants are presently unknown to PTB, who therefore asks leave of Court to amend this Complaint when the same have been ascertained.  PTB believes there may be as many as 100 of these Doe individuals/entities involved in these capacities with its property and adjacent properties.

14.     PTB is informed and believes and based thereon alleges that each of the Defendants are jointly and severally liable to PTB for 1,4-dioxane and other Hazardous Substances that migrated via soils and groundwater from Defendants' Excelsior property to PTB's property.

**GENERAL ALTER EGO ALLEGATIONS**

15.     PTB is informed and believes and based thereon alleges that Defendants, and each of them, were at all times mentioned the alter egos and/or agents of one another, and that there has existed at all times mentioned, a unity of interest and ownership and control between these Defendants such that any separateness between them has ceased to exist.

16.     PTB is informed and believes and based thereon alleges that Defendants at all times mentioned did completely control, dominate, manage and operate themselves, their trusts, companies and corporations as alter egos and/or agents of one another, such that any separateness

- 4 -

between them has ceased to exist and recognition of the corporate or trust forms would operate as a sham because they are the alter egos of Defendants and one another.

**RCRA NOTICE**

17.     Concurrently with the service of this Complaint, PTB gives formal, 90-day notice pursuant to the Resource Conservation & Recovery Act (RCRA), as amended, section 7002(b)(2)(A), 42 U.S.C. section 6972(b)(2)(A), to the Administrator of the United States Environmental Protection Agency (USEPA), the State of California Environmental Protection Agency (CalEPA), and the named Defendants, notifying them of PTB's intention to commence an action against the parties pursuant to RCRA section 7002(a)(1)(B) and 42 U.S.C. section 6972(a)(1)(B).

18.     In the event that neither the Administrator of the USEPA nor CalEPA commences and diligently prosecutes appropriate action as provided in RCRA section 7002(b)(2)(B) and/or (C), 42 U.S.C. sections 6972(b)(2)(B) and/or (C), then unless this action is stayed, PTB will seek to amend this Complaint to add additional claims for relief against Defendants pursuant to RCRA section 7002(a)(1)(B) and 42 U.S.C. section 6972(a)(1)(B).

**GENERAL ALLEGATIONS**

19.     The terms "Hazardous Substances" shall have the meaning provided in CERCLA sections 101(14) and 102, 42 U.S.C. section 9601(14).  The term "Release" shall have the meaning provided in CERCLA section 101(22), 42 U.S.C. section 9601(22).  The term "Disposal" shall have the meaning provided in CERCLA section 101(29), 42 U.S.C. section 9601(29).  The term "Removal" shall have the meaning provided in CERCLA section 101(23), 42 U.S.C. section 9601(23).  The terms "Remedial" and "Remedial Action" shall have the meaning provided in CERCLA section 101(24), 42 U.S.C. section 9601(24).

COMPLAINT FOR CERCLA AND RCRA CONTAMINATION

20.     In 2021, PTB initiated soil and groundwater investigation at its property.  As a result of that investigation, PTB discovered that its property contained elevated levels of various constituents, including, but not limited to, one or more of the Hazardous Substances identified above.

21.     Upon discovering the existence of certain Hazardous Substances on or about its property, PTB reported the discovery to the California Department of Toxic Substances Control (DTSC).  Pursuant to a Consent Agreement PTB entered with the DTSC, PTB embarked on a course of regulatory compliance, investigation and removal via a Remedial Action, which disclosed the history of its and adjacent properties.  Upon PTB's discovery of Hazardous Substances under its property that did not contribute to these Hazardous Substances, it learned in November 2023 the involvement of the parties named as Defendants.

22.     PTB acknowledges that its investigation discovered one Hazardous Substance that it used in its aerospace parts manufacturing process, Perchloroethylene (PCE), which has been found in its onsite soils and groundwater.  PTB was neither permitted to use nor did it use 1,1,1-trichloroethane.

23.     A review of California South Coast Air Quality Management District (SCAQMD) documents indicate that a nearby and adjacent business obtained a permit for a Vapor Degreaser that would have used chlorinated solvents.  That business was American Beauti Pleat, Inc. (ABP) that operated on the Excelsior property, located upgradient of PTB's property.  ABP was first permitted to use 1,1,1-trichloroethane in 1981, but began to operate on the Excelsior property in 1967.

24.     1,4-dioxane is a known stabilizer of 1,1,1-trichloroethane, and ABP's manufacturing operations and Hazardous Substances use on the Excelsior property caused

COMPLAINT FOR CERCLA AND RCRA CONTAMINATION

1,4-dioxane to be Released to the subsurface soils and groundwater.  Indeed, 1,4-dioxane is quite miscible in water and PTB therefore informed and believes and thereon alleges that 1,4-dioxane and other Hazardous Substances Released and/or Disposed of by APB migrated onsite to PTB's property, offsite from the Excelsior property.  PTB is informed and believes and thereon alleges that the remaining Defendants did nothing to prevent or cleanup the Hazardous Substances that migrated onto or under PTB's property from the Excelsior property.

25.     In contrast, however, 1,4-dioxane has not been analyzed in PTB's onsite soil samples, so the source of 1,4-dioxane in groundwater at PTB's site does not devolve from PTB.  Neither has PTB used a chemical that stabilizes into 1,4-dioxane.

26.     PTB alleges that during, from and after ABP's occupation of the Excelsior Property in 1967 to the present, Defendants Released and Disposed, failed to prevent the Release and Disposal and/or failed to undertake a Remedial Action to clean up their post-1967 Hazardous Substances, including 1,4-dioxane that migrated starting in 1981, from their Excelsior property onto PTB's adjacent property.  Those Hazardous Substances from Defendants' property were Released, Disposed, spilled, flowed or otherwise migrated onto or under PTB's property from the Excelsior property, all without PTB's permission.

27.     PTB is further informed and believes and thereon alleges that Defendants are indirectly, directly and derivatively responsible for any of ABP's tortious acts, including the torts of nuisance, trespass, and negligence.

28.     Defendant Trusts are a "Person" as that term is defined in CERCLA section 101(21), 42 U.S.C. § 9601(21).

- 7 -

29.     The Defendant Trusts' Excelsior property and ABP's operations thereon constitute a "Facility" as that term is defined in CERCLA section 101(9), 42 U.S.C. section 9601(9).

30.     PTB has discovered in the soils and groundwater under its property certain Hazardous Substances as that term is defined in CERCLA section 101(14), 42 U.S.C. section 9601(14), including 1,4-dioxane.  PTB is informed and believes and based thereon alleges that the Hazardous Substances Released and/or Disposed during the times set forth above, Defendants caused, failed to prevent and failed to remediate any such Release and/or Disposal of Hazardous Substances at their property, as those terms are defined in CERCLA sections 101(22) and (29), respectively, 42 U.S.C. sections 9601(22) and (29), respectively.

31.     PTB is informed and believes and based thereon alleges that at the time of any Release and Disposal of Hazardous Substances at its property, Defendants were an "Owner" or "Operator" as those terms are defined in CERCLA section 101(20)(A), 42 U.S.C. section 9601 (20)(A).

32.     PTB is informed and believes and based thereon alleges that Defendants caused or failed to prevent the Release and/or Disposal of Hazardous Substances on their property, which caused the Release of such substances on and under PTB's property as described, and both elevated the level and caused the Release of Hazardous Substances in the soils and groundwater surrounding PTB's property.

33.     Defendants were and are the Owners and Operators of the Excelsior property for the period of time that PTB alleges that Hazardous Substances were Released at the Excelsior property.  Defendants are liable to PTB for contribution to PTB's Remedial Action as Owners and Operators under CERCLA and as Responsible Persons pursuant to California Health and Safety Code section 25323.5.

34.     Defendants are also liable to PTB due to their activities, involvement, inaction and/or their prevention of these Releases and/or Disposal of Hazardous Substances at the Excelsior property, including without limitation, their involvement in the approval, design, construction, installation, and operation of the Vapor Degreaser on the Excelsior property. Defendants are also responsible for contribution to PTB's Remedial Action as Owners and Operators pursuant to CERCLA and as Responsible Persons pursuant to California Health and Safety Code sections 25300, *et seq.*

35.     Defendants are also liable to PTB for damages for nuisance, trespass, and negligence due to their activities, involvement and inaction in the Release, and/or Disposal of Hazardous Substances at the Excelsior property or their failure to prevent the Release and/or Disposal of Hazardous Substances, including without limitation their involvement in the approval, design, construction, installation and operation of the ABP Vapor Degreaser.

36.     Defendants are also liable to PTB for comparative indemnity and implied equitable indemnity due to their activities and involvement in the Release, and discharge of Hazardous Substances at the Excelsior property, or their failure to prevent the Release and discharge of Hazardous Substances including without limitation, their involvement in the approval, design, construction, installation, and operation of the APB Vapor Degreaser.

37.     Defendants are therefore liable to PTB by reason of the application of the doctrine of *respondent superior* due to the actions, inactions and omissions of their tenants, agents and employees, responsible for the Release and/or Disposal of Hazardous Substances onto and under the Excelsior property:  (a) for contribution under CERCLA; (b) for response costs under California Health and Safety Code sections 25300, *et seq.*; (c) for damages for nuisance, trespass, and negligence; and, (d) for comparative indemnity and implied equitable indemnity.

**TIMELINE 1967 - Present**

38.     PTB is informed and believes and based thereon alleges that Defendants conducted or allowed to be conducted certain industrial operations on or about their property from on or about 1967 to the present, including APB's Vapor Degreasers.

39.     PTB is informed and believes and based thereon alleges that, during this period from 1967 through the present, as part of their or their tenants' industrial operations, Defendants allowed their tenants to engage in manual degreasing of parts and machinery, as well as other activities including the storage and Disposal of certain chemicals, which resulted in the Release of certain Hazardous Substances, including one or more Hazardous Substances, to the soil and/or groundwater on or about the Excelsior property that migrated onto or under PTB's property.

40.     PTB is further informed and believes and based thereon alleges that in or about 1967, 1981 and continuing to the present, Defendants or their tenants began the process of approving, designing, installing, testing and conducting operations of Vapor Degreasers, which included a concrete catch basin to facilitate industrial degreasing operations (Vapor Degreasers). These Vapor Degreasers were installed and later operated at a location on the Excelsior property where significant amounts of one or more Hazardous Substances were Released and/or Disposed.

41.     PTB is further informed and believes and based thereon alleges that during this time period Defendants or their tenants were either directly involved in the approval of, acquisition and startup of the Vapor Degreasers, including approval, control and/or involvement relating to the design, purchase, installation, testing and startup operations of the Vapor Degreasers, and the chemicals ultimately used in the day-to-day operations and maintenance of the Vapor Degreasers both in 1967 and again in 1981, continuing to the present.

42.     PTB is informed and believes and based thereon alleges that Hazardous Substances were Released and/or Disposed during the time period as a result of the actions, inactions, omissions or activities of  Defendants' tenants, and each of them, including the manual degreasing operations, the defective and negligent design, installation, testing, startup, repair, maintenance and operation of the Vapor Degreasers and chemical storage tanks(s), piping, delivery of chemicals and their Disposal, the general manufacturing and production operations conducted at the Excelsior property the failure of such parties to provide appropriate overspill and containment protections, and the negligent pumping, filling, draining and overall handling of Hazardous Substances, which caused and permitted the spilling, discharging and Release and/or Disposal of Hazardous Substances at or about the Excelsior property that ultimately trespassed onto and/or under PTB's property.

## FIRST CLAIM FOR RELIEF

### (Contribution Under CERCLA against all Defendants)

43.     PTB incorporates by reference all prior paragraphs as though fully set forth.

44.     Defendants are each a "Person" as that term is defined in CERCLA section 101(21), 42 U.S.C. section 9601(21).

45.     The Defendant Trusts' Excelsior property and ABP's operations thereon constitute a "Facility" as that term is defined in CERCLA section 101(9), 42 U.S.C. section 9601(9).

46.     The substances and constituents that may have been disposed or Released at the Excelsior property are Hazardous Substances as those terms are defined in CERCLA section 101(14), 42 U.S.C. section 9601(14).  PTB is informed and believes and based thereon alleges that Defendants, and each of them, caused and/or failed to prevent any such Release and/or Disposal of Hazardous Substances at the Excelsior property, as those terms are defined in

CERCLA sections 101(22) and (29), respectively, 42 U.S.C. sections 9601(22) and (29), respectively.

47.     PTB is informed and believes and based thereon alleges that at the time of any Release and/or Disposal of Hazardous Substances at the Excelsior property, Defendants, and each of them, were an "Owner" or "Operator" as those terms are defined in CERCLA section 101(20)(A), 42 U.S.C. section 9601(20)(A).

48.     CERCLA section 107(a)(2) imposes joint and several liability upon "any Person who at the time of Disposal of any Hazardous Substances owned or operated any Facility at which site Hazardous Substances were Disposed of ... ."  42 U.S.C. § 9607(a)(2).

49.     CERCLA section 113(f)(1) imposes strict liability upon "any Person who is liable or potentially liable under [42 U.S.C. § 9607(a)] ... ."  42 U.S.C. § 9613(f)(1).

50.     CERCLA section 113(f)(1), 42 U.S.C. section 9613(f)(1), provides:

> Any Person may seek contribution from any other Person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title ... .  In resolving contribution claims, the court may allocate [Remedial Action] response costs among liable parties using such equitable factors as the court determines are appropriate. (capitalization added)

51.     PTB is informed and believes and based thereon alleges that Defendants, and each of them, conducted themselves in a manner that directly, proximately, and causally contributed to the damages sustained by PTB, as well as any costs incurred by PTB's Remedial Action.

52.     PTB is informed and believes and based thereon alleges that Defendants, and each of them, failed, and continued to fail, to undertake Removal or Remedial Action concerning the Hazardous Substances allegedly Released and/or Disposed at the Excelsior property in such a manner that would have prevented their trespass onto PTB's property.

53.     Defendants, and each of them, are therefore bound to pay contribution to PTB in a total amount as yet unknown for which PTB makes claim according to proof at trial, for any liability or potential liability under CERCLA section 107(a), 42 U.S.C. section 9607(a), including response costs incurred by PTB's Remedial Action, which are consistent with the National Contingency Plan, attorneys fees and costs under the doctrine of the tort of another, expenses for environmental investigation and environmental experts, and all other costs and expenses incident to the prosecution, investigation and handling of this action.

## <u>SECOND CLAIM FOR RELIEF</u>

**(California Health & Safety Code §§ 25300, *et seq.* against all Defendants**)

54.     PTB incorporates by reference paragraphs 1 - 42 as though fully set forth.

55.     PTB is informed and believes and based thereon alleges that Defendants are each a Person as that term is defined in California Health & Safety Code section 25319.

56.     The substances and constituents that may have been Released and/or Disposed at the Excelsior property are Hazardous Substances as defined in California Health & Safety Code section 25316.

57.     As alleged fully above, PTB is informed and believes and based thereon alleges that Defendants, and each of them, are each Responsible Parties under CERCLA section 107(a)(2), 42 U.S.C. section 9607(a)(2), and accordingly each are also a "liable Person" and a

"Responsible Person" as those terms are defined in California Health & Safety Code section 25323.5.

58.     During the time period alleged, there was a Release of Hazardous Substances at the Excelsior property, as that term is defined in California Health & Safety Code section 25320.

59.     Pursuant to California Health & Safety Code section 25363(e), "[a]ny Person who has incurred Removal or Remedial Action costs in accordance with this chapter or the federal act may seek contribution and indemnity from any Person who is liable pursuant to this chapter ... ."

60.     In complying with the requirements of California Health & Safety Code sections 25300, *et seq.,* PTB has incurred and will incur Removal and/or Remedial costs for its Remedial Action in the amount as yet unknown, for which PTB makes claim according to proof at trial.

**THIRD CLAIM FOR RELIEF**

**(California Civil Code § 3479 Against all Defendants)**

61.     PTB incorporates by reference paragraphs 1 - 42 as though fully set forth.

62.     PTB is informed and believes and based thereon alleges that the actions and omissions of Defendants, and each of their actions and failures to act with respect to the Hazardous Substances that were Released and/or Disposed at the Excelsior property have interfered with, and are continuing to interfere with, PTB's comfortable enjoyment of its leasehold interest.

63.     PTB is informed and believes and based thereon alleges that such actions and failures to act of Defendants and each of their actions and failures to act with respect to the Hazardous Substances that may have been Released at the Excelsior property constitute a

COMPLAINT FOR CERCLA AND RCRA CONTAMINATION

substantial and unreasonable restriction on PTB's ability to exercise fully its rights in its real property leasehold interest.

64.    PTB has been specifically and specially harmed as a direct result of Defendants' and each of their actions and failures to act.

65.    PTB is informed and believes and based thereon alleges that Defendants, and each of them, have created and are maintaining a nuisance that has caused PTB substantial harm in violation of California Civil Code section 3479.

66.    PTB is informed and believes and based thereon alleges that Defendants, and each of their actions and failures to act, have caused PTB to incur damages, including without limitation, Response and Remedial Action costs and related fees and costs for environmental experts and attorneys, all in an amount unknown at this time for which PTB makes claim according to proof at trial.

## **FOURTH CLAIM FOR RELIEF**

### **(Trespass Against all Defendants)**

67.    PTB incorporates by reference paragraphs 1 - 42 as though fully set forth.

68.    PTB is informed and believes and based thereon alleges that Defendants, and each of them, knew or should have known that they caused or allowed a Release and/or Disposal of Hazardous Substances that may have spilled, leaked, or may have been otherwise migrated onto or under PTB's property.

69.    PTB is informed and believes and based thereon alleges that Defendants were and are under a duty to abate the hazard of the Hazardous Substances they may have Released and/or

Disposed, allowed to be Released and/or Disposed or failed to prevent from being Released and/or Disposed.

70.    PTB is informed and believes and based thereon alleges that Defendants, and each of them, by failing and continuing to fail to remove from the Excelsior property any and all the Hazardous Substances that may be situated on or below the Excelsior property, have rendered and are rendering the PTB leasehold less valuable and has caused PTB to incur response costs for its Remedial Action, all in an amount unknown at this time for which PTB makes claim according to proof at trial.

71.    PTB is informed and believes and based thereon alleges that Defendants' and each of their actions and failures to act have caused PTB to incur damages, including without limitation, Response and Remedial costs for its Remedial Action and related expenses for environmental experts, and attorneys fees and costs, all in an amount unknown at this time for which PTB makes claim according to proof at trial.

## FIFTH CLAIM FOR RELIEF

### (Negligence Against all Defendants)

72.    PTB incorporates by reference paragraphs 1 -42 as though fully set forth.

73.    Defendants, and each of them, owe a duty to PTB, federal, state and local governments and the general public to use reasonable care in the handling, storage, transportation, Release and/or Disposal of Hazardous Substances, to prevent the wrongful Release and/or Disposal of such Hazardous Substances at the Excelsior property.

74.    PTB is informed and believes and based thereon alleges that at the time of these actions, inactions and events, Defendants, and each of them, failed to exercise reasonable care in

the handling, storage, transportation and Release and/or Disposal of Hazardous Substances, which caused the Release and/or Disposal of Hazardous Substances at the Excelsior property.  The failure to exercise reasonable care with respect to the Hazardous Substances at the Excelsior property constitutes a breach of the duty owed by Defendants to, among others, PTB.

75.     PTB is informed and believes and based thereon alleges that by breaching their duty of care to PTB, Defendants, and each of them, have been the actual and proximate cause of PTB incurring damages, including without limitation, Response and Remedial costs for its Remedial Action and related costs for environmental experts and attorneys fees and costs, and decrease in the value of PTB's leasehold interest, all in an amount unknown at this time for which PTB makes claim according to proof at trial.

## SIXTH CLAIM FOR RELIEF

### (Implied Equitable Indemnity Against all Defendants)

76.     PTB incorporates by reference paragraphs 1 - 42 as though fully set forth.

77.     PTB is informed and believes and based thereon alleges that Defendants, and each of them, conducted themselves in and about the matters alleged that directly, proximately and causally contributed to the damages sustained by PTB.

78.     PTB contends that it is not liable for the damages it suffered as a result of the Defendants' Releases, Disposal or failure to prevent such Releases and/or Disposal of Hazardous Substances on or about the Excelsior property that resulted in the trespass of these Hazardous Substances onto or under PTB's property.   Defendants are therefore liable to PTB for its damages as a result of the DTSC's requirements to remediate Defendants' Hazardous Substances on PTB's property.   This liability attaches by reason of the conduct or inaction of Defendants.

COMPLAINT FOR CERCLA AND RCRA CONTAMINATION

79.     PTB is informed and believes and based thereon alleges that Defendants, and each of them, are bound to indemnify and hold harmless PTB from any and all remediation costs, losses, expert expenses, attorneys fees and costs incurred as a result of its compliance with DTSC's cleanup requirements in its Remedial Action.

**SEVENTH CLAIM FOR RELIEF**

**(Comparative Indemnity Against all Defendants)**

80.     PTB incorporates by reference paragraphs 1 - 42 as though fully set forth.

81.     PTB contends that it is not liable for the damages it suffered as a result of Defendants' Release, Disposal or failure to prevent those Release and/or Disposal of Hazardous Substances that have trespassed onto or under its property, but instead, PTB is entitled to be indemnified on a comparative basis by Defendants, and each of them.

**EIGHTH CLAIM FOR RELIEF**

**(Declaratory Relief Against all Defendants)**

82.     PTB incorporates by reference paragraphs 1 - 42 as though fully set forth.

83.     An actual, legal controversy now exists between PTB and Defendants, and each of them.  PTB thus seeks a judicial declaration of its respective rights and legal relations with Defendants, and each of them, under Federal Rules of Civil Procedure, Rule 57, pursuant to 28 U.S.C. section 2201 and/or California Code of Civil Procedure section 1060.

84.     PTB contends, among other things:

      a.     that Defendants are liable to PTB for its Remedial Action to remove the contamination at issue; and,

COMPLAINT FOR CERCLA AND RCRA CONTAMINATION

b.      that Defendants are obligated to reimburse PTB for its past, current and future costs for its Remedial Action and other damages as a result of the contamination at issue.

85.     Defendants are expected to contend otherwise.

86.     PTB asks the Court for a declaration of the respective rights, duties, liabilities and obligations of the parties and the relative fault of each party, and all others, if any, who have contributed to PTB's damages, if any, and for the application of equitable factors and principles in determining the fault and liability of each party in making an allocation and apportionment for contribution by, between and among the parties.

87.     Declaratory judgment is therefore appropriate for numerous reasons, including the following:

a.      A declaratory judgment will prevent the need for multiple lawsuits as PTB incurs costs of response in the future for which Defendants should be liable, and provides a final resolution of the issues between these parties regarding liability for PTB's remediation costs and other expenses alleged;

b.      A declaratory judgment will assure that PTB will be reimbursed for costs already paid and incurred which PTB should not have had to pay in the first place in its Remedial Action; and,

c.      Public interest will be served in that a declaratory judgment will ensure an environmentally proper response.

- 19 -

88.     Accordingly, PTB asks the Court for a declaration of the respective rights, duties, liabilities and obligations of the parties and the relative fault of each party, and all others, if any, who have contributed to PTB's damages, if any, and for the application of the principles of indemnity and comparative indemnity by, between and among the parties.

89.     A judicial determination of Defendants is necessary and appropriate at this time in order that the parties may ascertain their rights and duties to one another.

## NINTH CLAIM FOR RELIEF

### (Declaratory Relief Under CERCLA Against all Defendants)

90.     PTB incorporates by reference paragraphs 1 - 42 as though fully set forth.

91.     CERCLA section 113(g)(2), 42 U.S.C. section 9613(g)(2), provides that in any action for recovery of response costs, the Court shall enter a declaratory judgment on liability for response costs or damages for PTB's Remedial Action that will be binding in any subsequent actions concerning response costs or damages.

92.     PTB asserts that Defendants, and each of them, rather than PTB, are liable for PTB's future Remedial Action response costs incurred to comply with DTSC cleanup requirements that relate to Hazardous Substances and in particular 1,4-dioxane, Released and/or Disposed of by Defendants.

93.     PTB is informed and believes and based thereon alleges that Defendants contend otherwise.

94.     The essential facts giving rise to the controversy between PTB, on the one hand, and Defendants, on the other hand, and establishing PTB's right to declaratory relief, are set forth

COMPLAINT FOR CERCLA AND RCRA CONTAMINATION

in this Complaint, and establish that Defendants, and each of them, are liable as Persons who at the time of any Release and/or Disposal, Owned or Operated a Facility at which Hazardous Substances were Released and/or Disposed.  CERCLA section 107(a)(2), 42 U.S.C. section 9607(a)(2).

95.     A judicial determination of the parties' respective CERCLA liability to one another is necessary and appropriate at this time in order that parties may ascertain their rights and duties to one another in subsequent actions.

## **PRAYER**

WHEREFORE, PTB prays for judgment against Defendants, and each of them, as follows:

**First Claim for Relief (Contribution under CERCLA):**

1.     PTB be awarded contribution to its Remedial Action in an amount according to proof at time of trial, but in any event no less than the amount of PTB's response costs, expert expenses, and attorneys fees and costs; and,

2.     For a declaration of the fault of Defendants, and each of them, which as to the First Claim for Relief (Contribution under CERCLA) proximately caused and contributed to any and all damage sustained by PTB in undertaking its Remedial Action.

**Second Claim for Relief (California Health & Safety Code sections 25300, *et seq.*):**

1.     For response costs and expert expenses in PTB's Remedial Action;

2.     For additional injunctive relief; and,

3.     For attorneys' fees and costs under the doctrine of the tort of another.

COMPLAINT FOR CERCLA AND RCRA CONTAMINATION

**Third Claim for Relief (Nuisance):**

      1.      For compensatory damages in an amount to be proven at trial; and,

      2.      For additional injunctive relief.

**Fourth Claim for Relief (Trespass):**

      1.      For compensatory damages in an amount to be proven at trial; and,

      2.      For additional injunctive relief.

**Fifth Claim for Relief (Negligence):**

      1.      For compensatory damages in an amount to be proven at trial.

**Sixth Claim for Relief (Implied Equitable Indemnity):**

      1.      PTB be awarded implied equitable indemnity in an amount as against Defendants, and each of them, according to proof at time of trial, but in any event no less than the amount of PTB's response costs, expert expenses, and attorneys fees and costs expended and expected to be expended in its Remedial Action.

**Seventh Claim for Relief (Comparative Indemnity):**

      1.      PTB be awarded implied comparative indemnity in an amount as against Defendants, and each of them, according to proof at time of trial, but in any event no less than the amount of PTB's response costs, expert expenses, and attorneys fees and costs expended and expected to be expended in its Remedial Action.

**Eighth Claim for Relief (Declaratory Relief):**

1.    For a declaration of respective fault of the parties that proximately caused and contributed to any and all damages sustained by PTB in its Remedial Action.

**Ninth Claim for Relief (Declaratory Relief Under CERCLA):**

1.    For a declaration of respective fault of the parties that proximately caused and contributed to any and all damages sustained by PTB in its Remedial Action.

**All Claims for Relief:**

1.    For attorneys' fees and costs of suit under the doctrine of the tort of another;

2.    For prejudgment interest;

3.    For attorneys' fees, costs and all other expenses incurred and to be incurred by PTB in investigating this claim and in conducting its Remedial Action;

4.    For damages in an amount according to proof at trial; and,

5.    For such other relief as the Court may deem just and proper.

DATED:  January 22, 2024                   WLC | THE WILLIAMS LAW CORPORATION

                                           By: _____
                                               J. Craig Williams
                                               Attorneys for Plaintiff Precision Tube Bending

- 23 -

1

## <u>JURY DEMAND</u>

2       Plaintiff Precision Tube Bending demands a trail by jury pursuant to Federal Rule of Civil

3   Procedure Rule 38.

4   DATED:  January 22, 2024          WLC | THE WILLIAMS LAW CORPORATION

5

6                          By: _____

7                            J. Craig Williams
                             Attorneys for Plaintiff Precision Tube Bending

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR CERCLA AND RCRA CONTAMINATION